J9NQtyuP

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
3    UNITED STATES OF AMERICA

               v.                      15 CR 333 (LTS)
4                                      19 CR 658 (LTS)
                                       Plea
5    ANDREI TYURIN

6                 Defendant
     ------------------------------x
7
                                       New York, N.Y.
8                                      September 23, 2019
                                       2:30 p.m.
9

10   Before:

11               HON. LAURA TAYLOR SWAIN
                                       District Judge
12

13                    APPEARANCES

14   GEOFFREY S. BERMAN
          United States Attorney for the
15        Southern District of New York
     EUN YOUNG CHOI
16        Assistant United States Attorney

17   FLORIAN MIEDEL
          Attorney for Defendant
18
     ALSO PRESENT:  Michael DeNicola, S.A. (FBI)
19                  Isabelle Avrutin, Interpreter (Russian)

20

21

22

23

24

25
```

J9NQtyuP

```
1              (Case called)
2              MS. CHOI:  Good afternoon, your Honor.  Eun Choi on
3     behalf of the government.
4              With me at counsel table is Special Agent Michael
5     DeNicola of the FBI.
6              THE COURT:  Good afternoon, Ms. Choi.  And Special
7     Agent DeNicola.
8              MR. MIEDEL:  Good afternoon, your Honor.
9              Florien Miedel for Mr. Tyurin.
10             THE COURT:  Good afternoon, Mr. Miedel.
11             Good afternoon, Mr. Tyurin.
12             THE DEFENDANT:  Good afternoon.
13             THE COURT:  Ms. Avrutin, you will be interpreting from
14    English to Russian and vice versa.  Is that correct?
15             THE INTERPRETER:  Yes, that's correct.
16             THE COURT:  Thank you.
17             Mr. Tyurin, if you have any difficulty understanding
18    the interpretation or hearing the interpreter at any time,
19    please let me or Mr. Miedel know, or raise your hand.
20             Are you hearing and understanding everything clearly
21    so far?
22             THE DEFENDANT:  Yes.
23             THE COURT:  Thank you.
24             Now, we have recently had transferred to and opened up
25    in this district indictment 19 CR 658, which was originally
```

J9NQtyuP

1    filed in the Northern District of Georgia as indictment

2    15 CR 393.  Am I correct in understanding that Mr. Tyurin has

3    not yet been arraigned on the 19 CR 658 transferred indictment?

4              MS. CHOI:  Correct, your Honor.

5              THE COURT:  And has he had a first appearance in

6    connection with that indictment?

7              MS. CHOI:  No, he has not.

8              THE COURT:  All right.  So first we'll address the

9    first appearance and arraignment in connection with that

10   indictment.

11             So, Mr. Tyurin, would you please stand.

12             (Complies)

13             THE COURT:  Please state your full name.

14             THE DEFENDANT:  Andrei Tyurin (In English).

15             THE COURT:  How old are you?

16             THE DEFENDANT:  36.

17             THE COURT:  I will now explain to you certain rights

18   that you have under the Constitution of the United States.

19             You have the right to remain silent.  You need not

20   make any statement.  Even if you have already made statements

21   to the authorities, you need not make any additional

22   statements.  Any statements that you do make can be used

23   against you.  Do you understand these rights?

24             THE DEFENDANT:  Yes.

25             THE COURT:  You have the right to be released, either

J9NQtyuP

1    conditionally or unconditionally, pending trial unless I find

2    that there are no conditions that would reasonably assure your

3    presence at future court hearings and the safety of the

4    community.

5         If the government were to ask me to detain you pending

6    trial in connection with this specific indictment, you're

7    entitled to a prompt hearing on whether such conditions exist.

8    Do you understand this right?

9         THE DEFENDANT:  Yes.

10        THE COURT:  You have the right to be represented by an

11   attorney today and at all future proceedings in this case.  And

12   if you are unable to afford an attorney, I will appoint an

13   attorney to represent you.  Do you understand these rights?

14        THE DEFENDANT:  Yes.

15        THE COURT:  Have you retained counsel in connection

16   with this case 19 CR 658?

17        THE DEFENDANT:  Yes.  Yes.

18        THE COURT:  Is that Mr. Miedel?

19        THE DEFENDANT:  Yes.

20        THE COURT:  Do you wish the Court to appoint counsel?

21        THE DEFENDANT:  No.

22        THE COURT:  Are you a citizen of the United States?

23        THE DEFENDANT:  No.

24        THE COURT:  And what is your country of citizenship?

25        THE DEFENDANT:  Russian Federation.

J9NQtyuP

1            THE COURT:  Because of your nationality, you're

2    entitled to have your country's consular representatives here

3    in the United States notified that you have been arrested and

4    detained.  After your consular officials are notified, they may

5    call or visit you.  You are not required to accept their

6    assistance, but they may be able to help you retain legal

7    counsel and contact your family and visit you in detention,

8    among other things.  Do you understand this right?

9            THE DEFENDANT:  Yes.

10           THE COURT:  Do you wish to have your consulate

11   notified?

12           THE DEFENDANT:  No.

13           THE COURT:  Now, I am informed that -- actually, we

14   will go on to the arraignment.

15           Mr. Miedel, have you seen the indictment that is now

16   numbered 19 CR 658 in this district?

17           MR. MIEDEL:  Yes, I have.

18           THE COURT:  And has it been read to Mr. Tyurin in

19   Russian?

20           MR. MIEDEL:  Yes, it has.

21           THE COURT:  Have you discussed it with Mr. Tyurin?

22           MR. MIEDEL:  Yes, I have.

23           THE DEFENDANT:  Yes.

24           THE COURT:  And so, Mr. Tyurin, have you seen this

25   document that has the number 19 CRIM 658 on it which sets out

J9NQtyuP

1   the charges against you that have been transferred from

2   Georgia?

3              THE DEFENDANT:  Yes, I did.

4              THE COURT:  Has it been read to you in Russian?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Have you discussed it with your attorney?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Do you understand the charges against you

9   that are set forth in this indictment?

10             THE DEFENDANT:  Yes, I understand.

11             THE COURT:  Do you want me to read it out loud to you

12  now word for word in court, or do you waive the public reading

13  of the indictment?

14             THE DEFENDANT:  No.

15             THE COURT:  Do you wish me to read it out loud to you?

16             THE DEFENDANT:  No.

17             THE COURT:  Very well.

18             I am going to ask you some questions in which I

19  summarize the charges to understand that you are familiar with

20  the charges.  Do you understand that Count One of this

21  indictment 19 CR 658 charges you with violating Section 1349 of

22  Title 18 of the United States Code by participating in a

23  conspiracy to commit wire fraud by conspiring with others to

24  defraud financial institutions and other companies?

25             THE DEFENDANT:  Yes.

1          THE COURT:  And to obtain money and property from

2     those financial institutions and companies, including the

3     confidential personal identifying information of customers by

4     means of materially false and fraudulent pretenses for the

5     purpose of executing and attempting to execute such scheme

6     transmitted by means of wire communication in interstate and

7     foreign commerce of certain writings, signs, signals, pictures

8     and sounds in violation of Section 1343 of Title 18.  Do you

9     understand that that is the charge in Count One?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you understand that in each of Counts

12    Two through Four of this indictment, you are charged with

13    violating Sections 1343 and 2 of Title 18 by committing wire

14    fraud in relation to the misappropriation of confidential

15    business information, specifically by transmitting the internet

16    logins to the customer account of an individual held in a

17    certain victim company from a server with a certain internet

18    protocol address and located in the foreign country as set out

19    in the indictment to victim servers located in the United

20    States for the purpose of executing and attempting to execute

21    the scheme and artifice and aiding and abetting the scheme?  Do

22    you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Do you understand that Count Five of the

25    indictment charges you with violating Section 371 of Title 18

J9NQtyuP

```
1    by participating in a conspiracy to commit computer fraud and

2    identity theft fraud -- sorry -- identity fraud by knowingly

3    agreeing with others to intentionally access protected

4    computers without authorization, and thereby obtain information

5    from protected computers in violation of the Georgia Criminal

6    Statute specified in the indictment; that is, to willfully use

7    and posses with intent to fraudulently use identifying

8    information concerning a person without authorization and

9    consent in violation of Title 18 of the United States Code

10   Sections 1030(a)(2)(C) and 1030(c)(2)(E)(ii).  Do you

11   understand that charge?

12            THE DEFENDANT:  Yes.

13            THE COURT:  Do you understand that in Count Six of the

14   indictment, you're charged with violating Title 18, Sections

15   1030(a)(2)(C) and 1030(c)(2)(B)(i) and Section 2 by

16   intentionally accessing a computer without authorization, and

17   thereby obtaining information from a protected computer for the

18   purpose of commercial advantage and private financial gain and

19   aiding and abetting the same?  Do you understand that charge?

20            THE DEFENDANT:  Yes.

21            THE COURT:  Do you understand that Count Seven of the

22   indictment charges you with violating Title 18, Sections

23   1030(a)(2)(C), 1030(c)(2)(B)(ii) and 2 by intentionally

24   accessing protected computers without authorization and thereby

25   obtaining information from protected computers in furtherance
```

J9NQtyuP

```
 1    of a criminal act in violation of the specified Georgia

 2    Criminal Statute; that is, to willfully use and possess with

 3    intent to fraudulently use identifying information concerning a

 4    person without authorization and consent and aiding and

 5    abetting the same?  Do you understand that charge?

 6              THE DEFENDANT:  Yes.

 7              THE COURT:  Do you understand that in each of Counts

 8    Eight through Ten of the indictment, you are charged with

 9    violating Sections 1028(a), (a)(1) and (2) of Title 18 by

10    committing aggravated identity theft by knowingly transferring,

11    possessing and using without lawful authority a means of

12    identification of another person during and in relation to the

13    commission of a felony and aiding and abetting the same?  Do

14    you understand that charge?

15              THE DEFENDANT:  Yes.

16              THE COURT:  And do you understand that the indictment

17    also includes a forfeiture allegation in which the government

18    asserts that you are required to forfeit all property

19    constituting or derived from proceeds of the crimes charged in

20    Counts One through Four of that indictment, and your interest

21    in all property used or intended to be used to facilitate the

22    crimes charged in Counts Five through Seven of that indictment?

23    Do you understand that?

24              THE DEFENDANT:  Yes.

25              THE COURT:  I have been informed that Mr. Tyurin
```

J9NQtyuP

1    intends to plead guilty to Counts One and Five of this

2    indictment 19 CR 658.  Is that correct, Mr. Miedel?

3             MR. MIEDEL:  Yes, your Honor, that is pursuant to a

4    plea agreement with the government and Rule 20 of the Federal

5    Rules of Criminal Procedure.

6             THE COURT:  Thank you.

7             Mr. Tyurin, how do you plead to the charges in Counts

8    Two, Three, Four, Six, Seven, Eight, Nine and Ten of that

9    indictment 19 CR 658?  Do you plead not guilty or guilty?

10            THE DEFENDANT:  No, I don't plead guilty.

11            THE COURT:  So you plead not guilty to those counts?

12            THE DEFENDANT:  Right, I plead not guilty.

13            THE COURT:  Thank you.

14            And I'm also informed Mr. Tyurin intends to proceed to

15    plea guilty to Counts One, Two, Eight and Nine of the ten count

16    superseding indictment that is labeled (S4) 15 CR 333.  Is that

17    correct, Mr. Miedel?

18            MR. MIEDEL:  That is correct.

19            THE COURT:  And that also is pursuant to a plea

20    agreement with a printed date of September 20, 2019 and an

21    execution date of today, September 23, 2019?

22            MR. MIEDEL:  Yes, your Honor.

23            THE COURT:  And has the executed copy of the agreement

24    been marked as Government Exhibit 1?

25            MR. MIEDEL:  Yes.

J9NQtyuP

1          THE COURT:  You have that there at defense table.  Is

2    that correct?

3          MR. MIEDEL:  I do.

4          THE COURT:  Do you also have at defense table the

5    executed copy of the advice of rights form marked as

6    Court Exhibit 1?

7          MR. MIEDEL:  Yes, I have.

8          THE COURT:  Ms. Choi, would you make a statement

9    regarding the government's victim identification and

10   notification activities in connection with this proceeding

11   today?

12         MS. CHOI:  Yes, your Honor.  The government's been in

13   contact with the victims at issue, and they are aware of the

14   proceedings today.

15         THE COURT:  Thank you.

16         Mr. Tyurin, before I accept your guilty plea, there

17   are a number of questions that I must ask you while you are

18   under oath to assure that your plea is valid.  At times I may

19   cover a point more than once, and I may cover matters that were

20   also addressed in the advice of rights form that you had seen.

21         If that happens, that will be because it is very

22   important that you understand what is happening here today.  If

23   you don't understand something that I ask you, please say so,

24   and I will reword the question or you may speak with your

25   attorney.  Do you understand that?

J9NQtyuP

1           THE DEFENDANT:  Yes.

2           THE COURT:  Ms. Ng, would you please administer the

3      oath?

4           (Defendant sworn)

5           THE COURT:  Thank you.

6           Please remain standing, but you can put your hand

7      down.

8           Mr. Tyurin, do you understand that you have solemnly

9      promised to tell the truth, and that if you answer any of my

10     questions falsely, your false or untrue answers may later be

11     used against you in a prosecution or perjury for making a false

12     statement?

13          THE DEFENDANT:  Yes, I understand.

14          THE COURT:  You can be seated for the next part of the

15     proceeding.

16          You are 36 years old.  Is that correct?

17          THE DEFENDANT:  Yes.

18          THE COURT:  And how far did you go in school?

19          THE DEFENDANT:  I graduated from a high school and a

20     college, and I didn't finish the university.

21          THE COURT:  And what field of study did you pursue in

22     college?

23          THE DEFENDANT:  Electrical machinery.

24          THE COURT:  And is that what you studied at university

25     also?

J9NQtyuP

1              THE DEFENDANT:  Yes.

2              THE COURT:  Are you able to read, speak and understand

3     the Russian language well?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Are you having any difficulty

6     understanding the interpreter?

7              THE DEFENDANT:  No.

8              THE COURT:  And you are not a U.S. citizen.  Is that

9     correct?

10              THE DEFENDANT:  I'm not.

11              THE COURT:  Are you now or have you recently been

12     under the care of a doctor or a psychiatrist?

13              THE DEFENDANT:  No.

14              THE COURT:  Have you ever been treated or hospitalized

15     for any mental illness or any type of addiction, including drug

16     or alcohol addition?

17              THE DEFENDANT:  No.

18              THE COURT:  In the past 24 hours, have you taken any

19     drugs, medicine or pills or had any alcohol to drink?

20              THE DEFENDANT:  No.

21              THE COURT:  Is your mind clear today?

22              THE DEFENDANT:  Yes.

23              THE COURT:  Are you feeling well physically today?

24              THE DEFENDANT:  Yes, fine.

25              THE COURT:  Do you feel comfortable making important

J9NQtyuP

1    decisions for yourself today?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Are you represented by a lawyer here

4    today?

5              THE DEFENDANT:  Yes.

6              THE COURT:  And what is your lawyer's name?

7              THE DEFENDANT:  Florian Miedel.

8              THE COURT:  Mr. Miedel and Ms. Choi, does either of

9    you have any doubt as to Mr. Tyurin's competence to enter a

10   plea at this time?

11             MS. CHOI:  No, not from the government, your Honor.

12             MR. MIEDEL:  No, your Honor.

13             THE COURT:  Thank you.

14             Mr. Tyurin, your attorney has informed me that you

15   wish to withdraw certain of your earlier not guilty pleas and

16   plead guilty to certain counts of each of the indictment we

17   have discussed.  Do you wish to plead guilty today?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Have you fully discussed your case with

20   your attorney, including the charges to which you intend to

21   plead guilty and any defenses that you may have to those

22   charges?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Have you and your attorney also discussed

25   the consequences of pleading guilty?

J9NQtyuP

1          THE DEFENDANT:  Yes.

2          THE COURT:  Are you satisfied with your attorney and

3     his representation of you?

4          THE DEFENDANT:  Yes.

5          THE COURT:  On the basis of Mr. Tyurin's responses to

6     my questions, and my observations of his demeanor, I find that

7     Mr. Tyurin is fully competent to enter an informed plea at this

8     time.

9          Before I accept your plea, sir, I am going to ask you

10    some more questions.  These questions are intended to satisfy

11    the Court that you want to plead guilty because you are in fact

12    guilty, and that you fully understand your rights and the

13    consequences of your plea.

14         I will now describe to you certain rights that you

15    have under the Constitution and laws of the United States.  You

16    will be giving up these rights if you plead guilty.  Please

17    listen carefully.  If you don't understand something that I am

18    saying or describing, stop me and I or your attorney may

19    explain it more fully.

20         Under the Constitution and laws of the United States,

21    you have the right to a speedy and public trial by a jury on

22    the charges against you that are in the two indictments.  Do

23    you understand that?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Do you understand that you have the right

J9NQtyuP

```
1    to plead guilty and to continue to plead not guilty to each of

2    the charges in each of the indictments?

3              THE DEFENDANT:  Yes.

4              THE COURT:  If there were a trial, you would be

5    presumed innocent, and the government would be required to

6    prove you guilty by competent evidence and beyond a reasonable

7    doubt.  You would not have to prove that you were innocent at a

8    trial.  Do you understand that?

9              THE DEFENDANT:  Yes.

10             THE COURT:  If there were a trial, a jury composed of

11   12 people selected from this district would have to agree

12   unanimously in order to find you guilty.  Do you understand

13   that?

14             THE DEFENDANT:  Yes.

15             THE COURT:  If there were a trial, you would have the

16   right to be represented by an attorney at the trial and at all

17   other stages of the proceedings.  And if you could not afford

18   one, an attorney would be provided to you free of cost.  Do you

19   understand that?

20             THE DEFENDANT:  Yes.

21             THE COURT:  If there were a trial, you would have the

22   right to see and hear all of the witnesses against you, and

23   your attorney could cross-examine them.  Also, you would have

24   the right to have your attorney object to the government's

25   evidence and offer evidence on your behalf if you so desired.
```

J9NQtyuP

1          In addition, you would have the right to have

2   witnesses required to come to court to testify in your defense,

3   and you would have the right to testify yourself, but you would

4   not be required to testify.  Do you understand all of that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Do you understand that if there were a

7   trial and you decided not to testify, no adverse inference

8   could be drawn against you based on your decision not to

9   testify?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you understand that if you were

12   convicted at a trial, you would have the right to appeal that

13   verdict?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Do you understand each and every one of

16   the rights that I've asked you about?

17          THE DEFENDANT:  Yes, I do.

18          THE COURT:  Do you have any questions about any of

19   these rights?

20          THE DEFENDANT:  No.

21          THE COURT:  Do you understand that by pleading guilty

22   today, you will be giving up each and every one of these

23   rights?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Do you also understand that you will be

J9NQtyuP

1    giving up any possible claim that your constitutional rights

2    may have been violated?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Do you understand that if you plead guilty

5    today, you will not have a trial?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Do you understand that by pleading guilty

8    today, you will also have to give up your right not to

9    incriminate yourself because I will ask you questions about

10   what you did in order to satisfy myself that you are guilty as

11   charged, and you will have to admit and acknowledge your guilt?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Do you understand that you can change your

14   mind right now and refuse to plead guilty.  You do not have to

15   enter this plea if you do not want to for any reason.  Do you

16   understand that fully?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Do you still want to plead guilty?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Now, I am returning to the subject of the

21   19 CR 658 indictment to confirm your understanding of the

22   charges to which you intend to plead guilty.

23             Do you understand that Count One of that indictment

24   charges you with violating Section 1349 of Title 18 by

25   participating in a conspiracy to commit wire fraud, conspiring

with others to defraud financial institutions and other

companies and to obtain money and property from those financial

institutions and companies, including the confidential personal

identifying information of customers by means of materially

false and fraudulent pretenses for the purpose of executing and

attempting to execute such scheme transmitting by means of wire

communication in interstate and foreign commerce certain

writings, signs, signals, pictures and sounds in violation of

Section 1343 of Title 18?  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  And do you understand that Count Five of

that indictment charges you with violating Section 1371 of

Title 18 by participating in a conspiracy to commit computer

fraud and identity fraud by knowingly agreeing with others to

intentionally access protected computers without authorization

and thereby obtaining information from protected computers in

furtherance of a criminal act in violation of the Georgia

Identity Fraud Statute, which is O.C.G.A. Section

16-9-121(a)(1); that is, to willfully use and possess with

intent to fraudulently use identifying information concerning a

person without authorization and consent in violation of Title

18 of the United States Code, Sections 1030(a)(2)(C) and

1030(c)(2)(B)(ii).

Do you understand that?

THE DEFENDANT:  Yes.

J9NQtyuP

1          THE COURT:  And now I will turn to the charges in

2    indictment (S4) 15 CR 333.  Have you received a copy of that

3    charging instrument as the charges against you in the number 15

4    CR 333 at the top?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Has it been read to you in Russian?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Have you discussed it with your attorney?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Do you want me to read Counts One, Two

11    Eight and Nine of the indictment out loud to you?

12          THE DEFENDANT:  No.

13          THE COURT:  So I will ask you some more questions

14    again.

15          Do you understand that Count One of indictment

16    15 CR 333, the (S4) indictment, charges you with violating

17    Title 18 of the United States Code, Section 371 by

18    participating in a conspiracy to commit computer hacking in

19    furtherance of federal securities fraud crimes from at least in

20    or about 2012 up to and including in or about July 2015?

21          THE DEFENDANT:  Yes, I understand.

22          THE COURT:  Do you understand that Count Two of

23    indictment (S4) 15 CR 333 charges you with violating Title 18

24    of the United States Code, Sections 1343 and 2 by committing

25    wire fraud in connection with obtaining authorized access to

J9NQtyuP

computer networks of various companies from at least in or

about 2012 up to and including in or about July 2015, and

aiding and abetting the same?

THE DEFENDANT:  Yes, I understand.

THE COURT:  Do you understand that Count Eight of

indictment (S4) 15 CR 333 charges you with violating Section

371 of Title 18 of the United States Code by conspiring to

violate the Unlawful Internet Gambling Enforcement Act from at

least in or about 2007, up to and including in or about

July 2015?

THE DEFENDANT:  Yes, I understand.

Do you understand that Count Nine of indictment

(S4) 15 CR 333 charges you with violating Title 18, Section

1349 by conspiring to commit wire fraud and bank fraud in

relation to an unlawful payment processing scheme from at least

in or about 2011 up to and including in or about July 2015.

THE DEFENDANT:  Yes, I understand.

THE COURT:  Do you understand that this indictment

also includes a forfeiture allegation in which the government

asserts that you are required to forfeit all property

constituting or derived from proceeds of the crimes charged in

Counts One, Two, Eight and Nine, and your interest in all

property used or intended to be used to facilitate the crime

charged in Count One?

THE DEFENDANT:  Yes, I understand.

1        THE COURT:  Do you understand that the government

2    would have to prove each and every part or element of Counts

3    One and Five of indictment 19 CR 658, and of Counts One, Two,

4    Eight and Nine of indictment (S4) 15 CR 333 beyond a reasonable

5    doubt at a trial if you did not plead guilty?

6        THE DEFENDANT:  Yes, I understand.

7        THE COURT:  Ms. Choi, would you please explain what

8    the government would have to prove if we were going to trial on

9    these charges.

10       MS. CHOI:  Yes, your Honor.

11       If I may, I will start with the (S4) 15 CR 333

12   indictment, and then proceed to the 19 CR 685 indictment.

13       As your Honor outlined, the plea agreement sets forth

14   the government's acceptance of a guilty plea in Counts One,

15   Two, Eight and Nine of (S4) indictment starting with Count One,

16   which is conspiracy to commit computer hacking in furtherance

17   of federal securities fraud crimes in violation of 18 United

18   States Code, Section 371.

19       The crime of conspiracy has three elements:

20       First, that two or more persons entered into the

21   unlawful agreement charged in the indictment;

22       Second, that the defendant knowingly and willfully

23   became a member of the conspiracy;

24       And, third, that one of the members of the conspiracy

25   knowingly committed at least one overt act to further some

J9NQtyuP

1   objective of the conspiracy.

2          As charged in the indictment, Count One has three

3   unlawful objects:

4          The first object is computer hacking in violation of

5   Title 18 United States Code, Sections 1030(a)(2)(A) and

6   1030(c)(2)(B), which has four elements:

7          First, that without authorization --

8          THE COURT:  Hang on one second.

9          Ms. Interpreter, is this all right for you or do you

10  want to -- it's all right?

11         Thank you.  Sorry to interrupt.

12         MS. CHOI:  I will try to slow down just a little bit.

13         That without authorization, the defendant accessed a

14  computer or accessed a computer with authorization but

15  exceeding his authority in accessing the information in

16  question;

17         Second, that the defendant acted intentionally;

18         Third, that the defendant obtained information

19  obtained in a financial record of a financial institution;

20         And, fourth, that the defendant acted for the purpose

21  of commercial advantage or private financial gain, or that the

22  offense was committed in furtherance of a securities fraud

23  scheme, or that the value of the information obtained was

24  greater than $5,000.

25         The second unlawful object of Count One is computer

J9NQtyuP

hacking in violation of Title 18 United States Code, Sections
1030(a)(2)(C) and 1030(c)(2)(B), which has four elements:

First, that without authorization, the defendant
accessed a computer or accessed a computer with authorization
but exceeded his authority in accessing the information in
question;

Second, that the defendant acted intentionally;

Third, that the defendant obtained information from a
protected computer;

And, fourth, that the defendant acted for the purpose
of commercial advantage or private financial gain, or that the
offense was committed in furtherance of a securities fraud
crime, or that the value of the information was greater than
$5,000.

The third unlawful object of Count One is computer
hacking in violation of Title 18 United States Code, Section
1030(a)(4) and 1030(c)(2)(B).  That has four elements:

First, that without authorization, the defendant
accessed a computer or accessed a computer with authorization
but exceeded his authority in accessing the information in
question;

Second, that the defendant acted with the intent to
defraud;

Third, that the defendant accessed further the
intended fraud;

J9NQtyuP

1          And, fourth, that the defendant obtained anything of

2    value, including the use of information if the value of that

3    information exceeded $5,000 in a one-year period.

4          Count Two of (S4) 15 CR 333 charges wire fraud in

5    connection with obtaining unauthorized access to computer

6    networks of various companies in violation of 18 United States

7    Code, Section 1343 and 2.

8          The crime of wire fraud has three elements:

9          First, that there was a scheme or artifice to defraud

10   or to obtain money or property by materially false and

11   fraudulent pretenses, representations or promises;

12         Second, that the knowingly and willfully participated

13   in a scheme or artifice to defraud with knowledge of its

14   fraudulent nature and with the specific intent to defraud;

15         And, third, that in execution of that scheme, the

16   defendant used or caused the use of interstate or international

17   wires.

18         Count Eight of the (S4) 15 CR 333 indictment charges

19   conspiracy to violate the Unlawful Internet Gambling

20   Enforcement Act in violation of 18 United States Code, Section

21   371.

22         The elements of the crime of conspiracy were the same

23   as in Count One of the indictment, and the unlawful object of

24   Count Eight is violation of the Unlawful Internet Gambling

25   Enforcement Act, Title 31 United States Code, Sections 5363 and

J9NQtyuP

1    5366.  This crime has three elements:

2              First, that the defendant engaged in the business of

3    betting and wagering;

4              Second, that the defendant accepted in connection with

5    the participation of another person in unlawful internet

6    gambling, credit or proceeds of credit, extended to or on

7    behalf of that other person (including credit extended through

8    the use of a credit card), or an electronic fund transfer, or

9    funds transmitted by and through a money transmitting business,

10   or proceeds of an electronic fund transfer or money

11   transmitting service from or on behalf of another person; or

12   any check, draft or similar instrument which is drawn by or on

13   behalf of such other person, and is drawn on or payable at or

14   through any financial institution;

15             And, third, that the defendant knowingly accepted such

16   transactions.

17             Count Nine of the (S4) 15 CR 333 indictment charges

18   conspiracy to commit wire fraud and bank fraud in relation to

19   an unlawful payment processing scheme in violation of Title 18

20   United States Code, Section 1349.

21             The elements of the crime of conspiracy were

22   previously outlined in relation to Count One.

23             Count Nine has two unlawful objects.  The first is

24   wire fraud, the elements of which were previously outlined in

25   relation to Count Two.

1              And the second unlawful object is bank fraud in

2     violation of United States Code, Section 1344, which has three

3     elements:

4              First, that there was a scheme to obtain money or

5     property owned or under the control or custody of a bank by

6     means of a materially false or fraudulent pretenses,

7     representations or promises;

8              Second, that the defendant executed or attempted to

9     execute the scheme with the intent to obtain money or property

10    owned or under the custody or control of the bank;

11             And, third, that at the time of the execution of the

12    scheme, the bank had its deposits insured by the Federal

13    Deposit Insurance Corporation.

14             Moving to indictment 19 CR 658, which was originally

15    in the Northern District of Georgia, Count One of that

16    indictment charges conspiracy to commit wire fraud in relation

17    to the misappropriation of confidential personal identifying

18    information in violation of Title 18, United States Code,

19    Section 1349.

20             The elements of the crime of conspiracy were

21    previously outlined in relation to Count One of the

22    (S4) 15 CR 333 indictment, and the unlawful object of this

23    crime is wire fraud, the elements of which were previously

24    outlined in relation to Count Two of the (S4) 15 CR 333

25    indictment.

J9NQtyuP

1        Count Five of the 19 CR 658 indictment charges

2    conspiracy to commit computer hacking in furtherance of a

3    criminal act in violation of the Georgia Identity Fraud

4    Statute, which is in violation of Title 18 United States Code,

5    Section 371.

6        Again, the elements of the crime of conspiracy were

7    previously outlined.  In this case the unlawful object is

8    computer hacking in violation of Title 18 United States Code,

9    Section 1030(a)(2)(C) and 1030(c)(2)(B), as was previously

10   outlined in relation to Count One of the (S4) 15 CR 333

11   indictment.  One distinction, however, is that the information

12   obtained as outlined in the 19 CR 658 indictment was obtained

13   in furtherance of a violation of the Georgia Identity Fraud

14   Statute, which your Honor outlined; specifically, to willfully

15   use and possess with intent to fraudulently use identifying

16   information concerning a person without authorization or

17   consent.

18       In addition, the government would have to prove venue

19   for each of the counts by a preponderance of the evidence.

20       THE COURT:  Thank you.

21       Mr. Tyurin, do you understand what the government

22   would have to prove if you did not plead guilty?

23       THE DEFENDANT:  Yes, I understand.

24       THE COURT:  Do you understand that the maximum

25   possible penalty for the crime charged in Count One of the

J9NQtyuP

1   19 CR 658 indictment is 30 years of imprisonment, plus a fine

2   of the greatest of $1 million, twice the gain resulting from

3   the offense or twice the loss to other people resulting from

4   the offense, plus $100 special assessment, plus five years of

5   supervised release after your term of imprisonment, plus full

6   restitution to all persons injured by your criminal conduct?

7            THE DEFENDANT:  I understand.

8            THE COURT:  Do you understand that the maximum

9   possible penalty for the crime charged in Count Five of the

10  19 CR 658 indictment is five years of imprisonment, plus a fine

11  of the greatest of $250,000, twice the gain resulting from the

12  offense, or twice the loss to other people resulting from the

13  offense, plus a $100 special assessment, plus three years of

14  supervised release after your term of imprisonment, plus full

15  restitution to all persons injured by your criminal conduct?

16           THE DEFENDANT:  I understand.

17           THE COURT:  Do you understand that the maximum

18  possible penalty for the crime charged in Count One of

19  indictment (S4) 15 CR 333 is five years of imprisonment, plus a

20  fine of the greatest of $250,000, twice the gain resulting from

21  the offense, or twice the loss to other people resulting from

22  the offense, plus a $100 special assessment, plus three years

23  of supervised release after your term of imprisonment, plus

24  full restitution to all persons injured by your criminal

25  conduct?

1          THE DEFENDANT:  Yes, I understand.

2          THE COURT:  Do you understand that the maximum

3    possible penalty for the crime charged in Count Two of the (S4)

4    indictment is 20 years of imprisonment, plus a fine of the

5    greatest of $250,000, twice the gain resulting from the

6    offense, or twice the loss to other people resulting from the

7    offense, plus a $100 special assessment, plus three years of

8    supervised release after your term of imprisonment, plus full

9    restitution to all persons injured by your criminal conduct?

10          THE DEFENDANT:  Yes, I understand.

11          THE COURT:  Do you understand that the maximum

12   possible penalty for the crime charged in Count Eight of the

13   (S4) indictment is five years of imprisonment, plus a fine of

14   the greatest of $250,000, twice the gain resulting from the

15   offense, or twice the loss to other people resulting from the

16   offense, plus a $100 special assessment, plus three years of

17   supervised release after your term of imprisonment, plus full

18   restitution to all persons injured by your criminal conduct?

19          THE DEFENDANT:  Yes, I understand.

20          THE COURT:  Do you understand that the maximum

21   possible penalty for the crime charged in Count Nine of the

22   (S4) indictment is 30 years of imprisonment, plus a fine of the

23   greatest of $1 million, twice the gain resulting from the

24   offense, or twice the loss to other people resulting from the

25   offense, plus a $100 special assessment, plus five years of

supervised release after your term of imprisonment, plus full

restitution to all persons injured by your criminal conduct?

THE DEFENDANT:  Yes, I understand.

THE COURT:  Do understand that the maximum combined

penalty for all of the crimes in the two indictments to which

you propose to plead guilty is 95 years of imprisonment, plus a

fine of $3 million or, if greater, the number sums of the

relevant gains, losses, property values, and statutory amounts

resulting from your offenses, plus full restitution to all

persons injured by your criminal conduct, plus a total of $600

in mandatory special assessments, plus supervised release for

five years after your term of imprisonment?

THE DEFENDANT:  Yes, I understand.

THE COURT:  I will now give you some information to

verify your understanding of the supervised release aspect of

the potential penalty.

Supervised release means that you will be subject to

monitoring when you are released from prison.  Terms and

conditions will be imposed.  If you violate any of the set

terms and conditions, you can be sent back to prison without a

jury trial.

If you are on supervised release and you do not comply

with any of the set terms or conditions, you can be sent back

to prison for up to three years.  You will be given no credit

for the time that you served in prison as a result of your

J9NQtyuP

1    sentence, and no credit for any time spent on any post release

2    supervision.

3              So, for example, if you received a prison term and

4    then a five-year term of supervised release, and after you left

5    prison, you lived up to the terms of supervised release for

6    almost five years, but then you violated some term of the

7    supervised release, you could be sent back to prison for three

8    whole years.  Do you understand that?

9              THE DEFENDANT:  Yes, I understand.

10             THE COURT:  Do you also understand that if I accept

11   your guilty plea and adjudge you guilty, there may be adverse

12   effects on your immigration status, including removal from the

13   United States, further detention following the completion of

14   your sentence, denial of United States citizenship,

15   denaturalization and denial of admission to the United States

16   in the future?

17             THE DEFENDANT:  Yes, I understand.

18             THE COURT:  Did you discuss the possible immigration

19   consequences of your plea with your attorney?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Under current law, there are Sentencing

22   Guidelines that judges must consider in determining your

23   sentence.  Have you spoken to your attorney about the

24   Sentencing Guidelines?

25             THE DEFENDANT:  Yes.

J9NQtyuP

1          THE COURT:  Do you understand that in determining your

2     sentence, the Court must calculate the applicable Sentencing

3     Guidelines range, and consider that range, possible departures

4     under the Sentencing Guidelines, and other sentencing factors

5     under Title 18, Section 3553(a)?

6          THE DEFENDANT:  Yes, I understand.

7          THE COURT:  Do you understand that the Court has

8     discretion while taking the guidelines into account to sentence

9     you to any period of imprisonment from time served up to the

10    statutory maximum of 95 years of imprisonment?

11         THE DEFENDANT:  Yes, I know that.

12         THE COURT:  Do you understand that even though your

13    plea agreement includes a stipulated or agreed Sentencing

14    Guidelines calculation, the Court will not be able to determine

15    your sentence until after a presentence report has been

16    completed by the probation department, and you and the

17    government had a chance to challenge any of the facts reported

18    by the probation department?

19         THE DEFENDANT:  Yes, I understand.

20         THE COURT:  Do you understand that you may have the

21    right to appeal your sentence under certain circumstances even

22    if your plea agreement provides that you are waiving your right

23    to appeal?

24         THE DEFENDANT:  Yes, I understand.

25         THE COURT:  Do you understand that if your attorney or

J9NQtyuP

1    anyone else has attempted to estimate or predict what your

2    sentence will be, their estimate or prediction could be wrong?

3            THE DEFENDANT:  Yes, I know that.

4            THE COURT:  No one, not even your attorney or the

5    government, can, or should, give you any assurance of what your

6    sentence will be because your sentence cannot be determined

7    until after the probation officer report is completed, and I

8    have ruled on the challenges to the report, and I have

9    determined what the appropriate sentence is.  Do you understand

10   this?

11           THE DEFENDANT:  Yes, I understand.

12           THE COURT:  Do you also fully understand that even if

13   your sentence is different from what your attorney or anyone

14   else told you it might be, or if it is different from what you

15   expect, you will still be bound to your guilty plea, and you

16   will not be allowed to withdraw your guilty plea?

17           THE DEFENDANT:  Yes, I understand.

18           THE COURT:  Mr. Miedel, would you please show

19   Mr. Tyurin page 6 of the plea agreement, which is Government

20   Exhibit 1, and specifically the paragraph with the stipulated

21   Sentencing Guidelines page.

22           (Complies)

23           THE COURT:  Mr. Tyurin, this agreement provides that

24   the stipulated Sentencing Guidelines range is from 188 to 235

25   months of imprisonment.  Do you understand that this

J9NQtyuP

stipulation does not bind the Court or the probation department
as to the facts on which it is based, as to how to apply the
guidelines to the facts, or as to what will be an appropriate
sentence in your case?

THE DEFENDANT:  Yes, I understand.

THE COURT:  Do you understand that I may decide to
impose a sentence that is outside the guidelines range?

THE DEFENDANT:  Yes, I understand.

THE COURT:  Are you now serving any state or federal
sentence, or are you being prosecuted for any other crime?

THE DEFENDANT:  No.

THE COURT:  Would you please look again at Government
Exhibit 1, which is the plea agreement.  Have you signed this
agreement?

THE DEFENDANT:  Yes, I signed it.

THE COURT:  Was it read to you in Russian before you
signed it?

THE DEFENDANT:  Yes, I read it in Russian.

THE COURT:  So was it translated into Russian,
Mr. Miedel?

MR. MIEDEL:  It was translated into Russian.

THE COURT:  Very well then.  Did you discuss it with
your attorney before you signed it?

THE DEFENDANT:  Yes.

THE COURT:  And did you fully understand the agreement

1    before you signed it?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Does the agreement reflect accurately your

4    complete and total understanding of the entire agreement

5    between the government, your attorney and you?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Is everything that you understand about

8    your plea and sentence covered in the agreement?

9              THE DEFENDANT:  Yes.

10              THE COURT:  Has anything been left out?

11              THE DEFENDANT:  No, I don't think so.

12              THE COURT:  Has anyone made any promises to you other

13    than what is written in the plea agreement, or threatened you

14    or forced you to plead guilty or enter into the plea agreement?

15              THE DEFENDANT:  No.

16              THE COURT:  Do you understand that on page 5, the

17    agreement includes a stipulation as to the grouping of Counts

18    One, Two and Nine of the (S4) indictment and Counts One and

19    Five of the 19 CR 658 indictment, and I will refer to that

20    grouping as Group One, that you agree that the loss was more

21    than $25 million but less than $65 million?

22              THE DEFENDANT:  Yes.

23              THE COURT:  Do you understand that the loss amount

24    affects sentencing calculations under the Sentencing

25    Guidelines?

J9NQtyuP

1          THE DEFENDANT:  Yes, I understand.

2          THE COURT:  Do you understand that you are under no

3    obligation to make an agreement with the government as to the

4    amount of the loss?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Do you understand that on page 5, the

7    agreement includes a stipulation as to that same Group One that

8    you agree that the offense involved ten or more victims?

9          THE DEFENDANT:  Yes.

10         THE COURT:  Do you understand that the number of

11   victims affects sentencing calculations under the guidelines?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Do you understand that you are under no

14   obligation to make an agreement with the government as to the

15   number of victims?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Do you understand that also on page 5 the

18   agreement includes a stipulation as to Group One that you agree

19   that a substantial part of the fraudulent scheme was committed

20   from outside of the United States, and that the offense

21   involved sophisticated means, and that you intentionally

22   engaged in or caused the conduct constituting sophisticated

23   means?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Do you understand that these facts affect

1    the sentencing calculations under the guidelines?

2             THE DEFENDANT:  Yes.

3             THE COURT:  Do you understand that you're under no

4    obligation to make an agreement with the government as to these

5    facts?

6             THE DEFENDANT:  Yes.

7             THE COURT:  Do you understand that also on page 5 the

8    agreement includes a stipulation as to Group One that your

9    offense involved the possession or use of an authentication

10   feature, and the unauthorized transfer or use of a means of

11   identification unlawfully to obtain another means of

12   identification, and the possession of five or more means of

13   identification that unlawfully were obtained by the use of

14   another means of identification?

15            THE DEFENDANT:  Yes.

16            THE COURT:  Do you understand that these facts affect

17   the sentencing calculations under the Sentencing Guidelines?

18            THE DEFENDANT:  Yes.

19            THE COURT:  Do you understand that you are under no

20   obligation to make an agreement with the government as to these

21   facts?

22            THE DEFENDANT:  Yes.

23            THE COURT:  Do you understand that the agreement also

24   on page 5 includes a stipulation as to Group One that you agree

25   that you were convicted of an offense under Title 18, Section

J9NQtyuP

1   1030, and that the offense involved the intent to obtain

2   personal information?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Do you understand that this fact affects

5   sentencing calculations under the Sentencing Guidelines?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you understand you are under no

8   obligation to make an agreement with the government as to this

9   fact?

10          THE DEFENDANT:  Yes, I understand.

11          THE COURT:  Do you understand that your agreement

12   again on page 5 includes a stipulation as to Group One that you

13   willfully obstructed, or impeded, and attempted to obstruct and

14   impede the administration of justice with respect to the

15   investigation of the offense of conviction; and that the

16   obstructive conduct related to the offense of conviction and

17   relevant conduct?

18          THE DEFENDANT:  Yes, I understand.

19          THE COURT:  Do you understand that these facts affect

20   sentencing calculations under the Sentencing Guidelines?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Do you understand that you are under no

23   obligation to make an agreement with the government as to these

24   facts?

25          THE DEFENDANT:  I understand, yes.

J9NQtyuP

1          THE COURT:  And do you understand that pages 3 and 4

2     of the agreement provide that you are admitting certain of the

3     forfeiture allegations in each of the indictments, and that you

4     agree that you must forfeit to the United States the sum of

5     $19,214,956 in United States currency representing the proceeds

6     of the offenses to which you are pleading guilty?

7          THE DEFENDANT:  Yes, I understand.

8          THE COURT:  Do you understand that you are under no

9     obligation to make an agreement with the government as to any

10    amount that you are required to forfeit?

11         THE DEFENDANT:  Yes.

12         THE COURT:  And do you understand that anything that

13    you do forfeit will not count against any other fine, penalty

14    or restitution that the Court may impose as part of your

15    sentence?

16         THE DEFENDANT:  Yes.

17         THE COURT:  I have been given a proposed consent

18    preliminary order of forfeiture and money judgment providing

19    for the entry of a money judgment against Mr. Tyurin in the

20    amount of 19,214,956 in connection with this guilty plea.

21         Mr. Miedel, have you reviewed the consent preliminary

22    order of forfeiture?

23         MR. MIEDEL:  Yes, I have.

24         THE COURT:  Has it been read to Mr. Tyurin in Russian

25    or translated for him?

J9NQtyuP

```
1              MR. MIEDEL:  Yes, it has.

2              THE COURT:  Do you have any objections to the form or

3    content of the order?

4              MR. MIEDEL:  I do not.

5              THE COURT:  Mr. Tyurin, have you reviewed the proposed

6    order of forfeiture with your attorney?

7              THE DEFENDANT:  Yes, I did.

8              THE COURT:  Have you signed it?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Did you understand it before you signed

11   it?

12             THE DEFENDANT:  Yes.

13             THE COURT:  And, Ms. Choi, would you please explain

14   briefly the computation of the figure provided for by way of

15   forfeiture.

16             MS. CHOI:  Your Honor, it is based on various

17   communications between the defendant and his co-conspirators as

18   to the specific proceeds that would be given to him as payment

19   for his participation in the crimes.

20             THE COURT:  Thank you.

21             So I will enter this in connection with today's

22   proceeding.

23             Mr. Tyurin, do you understand that on page 7, the plea

24   agreement provides that you are giving up or waiving your right

25   to appeal, to litigate or challenge your sentence under Title
```

J9NQtyuP

28, Sections 2255 and/or 2241, and your right to seek a

sentence reduction under Title 18, Section 3582(c) if I

sentence you to 235 or fewer months in prison?

        THE DEFENDANT:  Yes, I understand.

        THE COURT:  Do you understand that the agreement also

provides that you will not appeal any term of supervised

release of five years or less?

        THE DEFENDANT:  Yes.

        THE COURT:  Do you understand that the agreement

provides that you will not appeal any fine of $1 million or

less?

        THE DEFENDANT:  Yes.

        THE COURT:  Do you understand that the agreement also

provides that you are acknowledging that you want to plead

guilty regardless of any immigration consequences of your plea

and conviction, even possible deportation or denaturalization

and that you will be able to withdraw your guilty plea based on

any immigration consequences of your plea and conviction?

        THE DEFENDANT:  Yes, I do understand.

        THE COURT:  Do you understand that the agreement also

provides that you are giving up your right to appeal or

litigate or challenge your sentence under Sections 2255 and/or

2241 of Title 28 on the basis of any adverse immigration

consequences that may result from your guilty plea and

conviction?

J9NQtyuP

1              THE DEFENDANT:  Yes.

2              THE COURT:  Do you understand that you are under no

3    obligation to waive your rights to appeal or otherwise litigate

4    any aspect of your sentence?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Do you understand that the agreement also

7    provides that the appeal and collateral challenge waiver

8    provisions that we had just discussed do not affect whatever

9    rights you may have to assert claims of ineffective assistance

10   of counsel, whether on direct appeal, collateral review, or

11   otherwise?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Do you understand that the agreement

14   provides that you will not move for a downward departure under

15   the Sentencing Guidelines or seek any adjustment under the

16   guidelines that is not described in the plea agreement, but

17   that you can make arguments for a lower sentence under the

18   general sentencing statute that is known as Section 3553(a)?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Do you understand that even if the

21   government does not oppose or take a position on what your

22   attorney will ask as a sentence, I am free to impose whatever

23   sentence I believe is appropriate under the circumstances and

24   the applicable law, and you will have no idea right to withdraw

25   your plea?

J9NQtyuP

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you still want to plead guilty pursuant

3     to this plea agreement?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Mr. Miedel, do you know of any valid

6     reason why Mr. Tyurin would prevail at trial?

7          THE DEFENDANT:  No, your Honor.

8          THE COURT:  Do you know of any reason why he should

9     not be permitted to plead guilty?

10          MR. MIEDEL:  No, your Honor.

11          THE COURT:  Mr. Tyurin, would you please stand now and

12     tell me what you did that makes you guilty of each of the

13     crimes to which you are pleading guilty.

14          THE DEFENDANT:  Between 2012 and 2015, I agreed with

15     others to hack into computers for the purpose of obtaining

16     information that would give me and my co-conspirators a

17     financial advantage.  For example, in 2013, I hacked into the

18     computers at a financial publication company in Manhattan and

19     obtained data about their subscribers.  The purpose was for

20     those subscribers to be contacted and recorded to participate

21     in a fraudulent stock opportunity scheme.

22          MR. MIEDEL:  Your Honor, I just want to break in that

23     Mr. Tyurin is going to allocute in order for each count.  This

24     was the allocution for Count One of the 15 CR indictment.

25          THE COURT:  Thank you.

J9NQtyuP

1              THE DEFENDANT:  So with regards to the Count Two:

2    Between 2012 and 2015, I participated in a scheme to defraud

3    people through fraudulent investment opportunities.  Through my

4    hacking activities, which were conducted by computer and over

5    the internet, I obtained addresses, phone numbers and email

6    addresses of individuals, who were then contacted by my

7    co-conspirators in an effort to defraud them through a

8    pump-and-dump securities fraud scheme.

9              THE COURT:  Before you go on, I just want to ask you.

10   You've used the term defraud.  What do you mean by that?

11             THE DEFENDANT:  They were defrauding people with

12   regards to the increase of the value of their investments.

13             THE COURT:  And when you say they were defrauding, do

14   you mean the people with whom you had an agreement?

15             THE DEFENDANT:  Yes, my co-conspirators.

16             THE COURT:  And you had agreed with them that they

17   would have these communications with the people you were

18   contacting with the stolen information?

19             THE DEFENDANT:  Yes.

20             THE COURT:  And when you say that they were defrauding

21   them with respect to the amount that they would receive, do you

22   mean that they were telling people that the people would make

23   more money than they could actually expect to make under this

24   scheme?  Was that the fraud?

25             (Counsel and defendant consult through interpreter)

J9NQtyuP

1         THE DEFENDANT:  I understand that the information that

2    was given to those people was incorrect, was false.

3         THE COURT:  And you understand that that false

4    information related to the amount of money that those people

5    might be able to make on an investment?

6         THE DEFENDANT:  Right.  It was not true information.

7    It was made-up information.

8         THE COURT:  And this information was given to them in

9    order to persuade them to give over money themselves to invest?

10        THE DEFENDANT:  Yes, they wanted them to invest in

11   those papers.

12        THE COURT:  And what do you mean by pump-and-dump?

13        THE DEFENDANT:  It's a scheme where based on the false

14   information -- original false information, the price and the

15   demand of the investment is exaggerated.  And then when the

16   price would go up, then those papers will be dumped, they will

17   be sold.

18        THE COURT:  When you say "those papers," the stocks or

19   the investments?

20        THE DEFENDANT:  Yes, stocks.

21        THE COURT:  Thank you.  You may continue.

22        THE DEFENDANT:  I did so in part by using credentials

23   to access databases that I was not authorized to access, and

24   through the use of wires in the form of internet connections

25   between computers.  Among other entities, I hacked into the

J9NQtyuP

1    databases of companies located in the Southern District of New

2    York.

3              Count Eight:  Between 2007 and 2015, I agreed with

4    others to participate in an unlawful internet gambling scheme.

5    Specifically, my co-conspirators operated unlawful internet

6    gambling site, and by hacking into the database of competitors,

7    I was able to further the internet gambling scheme by providing

8    my conspirators with customer lists for them to contact and to

9    try to lure them to become customers of my co-conspirators'

10   import net gambling operation.  Those unlawful gambling sites

11   allowed for U.S. customers, including customers located in the

12   Southern District of New York, to make deposits to gamble

13   through the use of credit and debit cards.

14             Count Nine --

15             THE COURT:  Before you go on to Count Nine, you've

16   used the term "hacking into computers" several times.  In

17   general, what do you mean by "hacking"?

18             THE DEFENDANT:  Unless access of networks.

19             THE COURT:  Unless networks of?

20             THE DEFENDANT:  Sorry.  Unlawful access of networks.

21             THE COURT:  And so going into networks where you were

22   not authorized to go in, is that one way -- one thing that you

23   mean?

24             THE DEFENDANT:  Yes.

25             THE COURT:  And does it also mean going into networks

J9NQtyuP

1   where you had some authority to go in but not authority to do

2   what you did?

3          MR. MIEDEL:  I don't think he had authority to go into

4   any of the networks he went into.

5          THE COURT:  So it was all unauthorized?

6          MR. MIEDEL:  Yes.

7          THE COURT:  So did you have authority to go into any

8   of the networks -- proper authority to go into any of the

9   networks you entered?

10         THE DEFENDANT:  No.

11         THE COURT:  Thank you.  You may continue with Count

12  Nine.

13         THE DEFENDANT:  Between 2011 and 2015, I agreed with

14  others to defraud credit card processing banks by hacking into

15  a company that assessed merchant risk and compliance for credit

16  card processing issues.  This allowed my co-conspirators to

17  determine when their fraudulent credit card processing scheme

18  was being detected, and to institute countermeasures.  My

19  assistance in this effort allowed credit card payments for

20  illegal gambling activities disguised as lawful purchases to

21  proceed and avoided fine.  My hacking was done by computer and

22  over the internet through the use of wires, and affected

23  various banks, including banks located in the Southern District

24  of New York.

25         So the following indictment is from Atlanta, Counts

J9NQtyuP

One and Five:

Between 2012 and 2014, I agreed with others to infiltrate the databases of certain financial institutions to obtain personal identifying information of their customers. Specifically, I hacked into at least one financial institution located in Georgia by using my computer via the internet, and I obtained identifying information about its customers, such as names, addresses and email addresses.  Some of the customers whose information I obtained lived in Georgia.  The purpose of unlawfully obtaining this information was to create a database of people in the United States who would receive mass mailings presenting them with the opportunity to invest in securities. My co-conspirators artificially inflated the prices of the securities and deceived the potential investors about their returns.  That's it.

THE COURT:  So I noticed that you were referring to some notes when you were explaining to me what you did.  Who prepared those notes?

THE DEFENDANT:  My attorney.

THE COURT:  And did he prepare those based on information that you gave to him about what you've done?

THE DEFENDANT:  Yes, including that.

THE COURT:  And is everything that you have just told me about what you have done the truth about what you have done?

THE DEFENDANT:  Yes, it's the truth.

J9NQtyuP

1          THE COURT:  And when you did the things that you've

2     just told me about, did you know that what you were doing was

3     wrong and illegal?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Ms. Choi, does the government wish any

6     further factual matters to be addressed in the plea allocution?

7          MS. CHOI:  Your Honor, nothing that the defendant can

8     allocute to with his own knowledge.  The government would just

9     posit or proffer a few facts to show that certain of the

10    elements were met.

11          First, that the value of the information obtained,

12    which included financial records from various financial

13    institutions, was greater than $5,000, which would be evidenced

14    both by the defendant's gains as well as the losses to the

15    victims;

16          That the computers at issue that were hacked were both

17    used exclusively by financial institutions or, alternatively,

18    protected computers because they were in and affecting

19    interstate and foreign commerce;

20          And that the financial institutions and the banks that

21    were affected by the defendant's hacking schemes included

22    victim banks whose deposits were FDIC insured;

23          And that, finally, the wires at issue, because of the

24    fact that the defendant was abroad and the victims were in the

25    United States, required the use of interstate and foreign

J9NQtyuP

1    wires.

2             THE COURT:  Would you please summarize the

3    government's evidence against Mr. Tyurin.

4             MS. CHOI:  Yes, your Honor.

5             The evidence would essentially be three categories, as

6    it were.

7             First, would be evidence from the victim companies in

8    the form of network logs and other data that would establish

9    that there had been unauthorized access and the exfiltration of

10   data from these various networks;

11            Second, would be a category of search warrant returns

12   and mutual legal assistance treaty returns that would include

13   evidence of the exfiltrated data held by the co-conspirators,

14   as well as discussions amongst the co-conspirators, including

15   this defendant regarding the hacking activities at issue, and

16   the other criminal activities to which he allocuted;

17            And, finally, travel records that would establish in

18   combination with evidence from Category Two that it was in fact

19   this particular individual, the defendant, who was the hacker,

20   who was communicating with the other co-conspirators.

21            THE COURT:  Thank you.

22            Mr. Tyurin, how do you now plead to the charge in

23   Count One of the 19 CR 658 indictment?  Not guilty or guilty.

24            THE DEFENDANT:  I plead guilty.

25            THE COURT:  How do you plead to the charge in Count

J9NQtyuP

1    Five of the 19 CR 658 indictment?

2              THE DEFENDANT:  I plead guilty.

3              THE COURT:  How do you plead to the charge in Count

4    One of the (S4) 15 CR 333 indictment?

5              THE DEFENDANT:  Yes, I plead guilty.

6              THE COURT:  How do you plead to the charge in Count

7    Two of the (S4) 15 CR 333 indictment?

8              THE DEFENDANT:  Yes, I plead guilty.

9              THE COURT:  How do you plead to the charge in Count

10   Eight of the (S4) 15 CR 333 indictment?

11             THE DEFENDANT:  I plead guilty.

12             THE COURT:  How do you plead to the charge in Count

13   Nine of the (S4) 15 CR 333 indictment?

14             THE DEFENDANT:  I plead guilty.

15             THE COURT:  Are you pleading guilty to each of these

16   charges because you are in fact guilty of the crime charged in

17   each count?

18             THE DEFENDANT:  Yes, I plead guilty to those counts

19   because I am in fact guilty.

20             THE COURT:  Are you pleading guilty voluntarily and of

21   your own free will?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Mr. Miedel, would you please show

24   Mr. Tyurin Court Exhibit 1 the advice of rights form.

25             Mr. Tyurin, have you signed in form?

J9NQtyuP

1              THE DEFENDANT:  Yes.

2              THE COURT:  Was it read to you in Russian before you

3     signed it?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Did you discuss it with your attorney

6     before you signed it?

7              THE DEFENDANT:  Yes.

8              THE COURT:  And did you understand it before you

9     signed it?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Mr. Miedel, did you also review and sign

12    Court Exhibit 1?

13             MR. MIEDEL:  Yes, your Honor.

14             THE COURT:  Mr. Miedel, are there any other questions

15    you believe I should ask Mr. Tyurin in connection with the

16    plea?

17             MR. MIEDEL:  No, I do not, your Honor.

18             THE COURT:  Ms. Choi, are there any other questions

19    that you believe I should ask in connection with the plea?

20             MS. CHOI:  No, your Honor.

21             THE COURT:  Mr. Tyurin, you have acknowledged that you

22    are guilty as charged in Counts One and Five of indictment

23    19 CR 658, and Counts One, Two, Eight and Nine of indictment

24    (S4) 15 CR 333.  I find that you know your rights and that you

25    are waiving them voluntarily.

J9NQtyuP

1          Because your plea is entered knowingly and

2     voluntarily, and is supported by an independent basis in fact

3     containing each of the essential elements of each offense, I

4     accept your guilty plea and adjudge you guilty of the offenses

5     charged in Counts One and Five of indictment 19 CR 658 and

6     Counts One, Two, Eight and Nine of indictment (S4) 15 CR 333.

7          Mr. Miedel, do you wish to be present for any

8     interview of Mr. Tyurin in connection with the presentence

9     report?

10          MR. MIEDEL:  Yes, I do.

11          THE COURT:  I will make that direction.  And you can

12     both be seated.

13          Ms. Ng, may I have a sentencing date, please?

14          DEPUTY CLERK:  Thursday, January 9, 2020 at 11:30 a.m.

15          THE COURT:  Are counsel available on January 9 at

16     11:30, did you say?

17          DEPUTY CLERK:  Yes.

18          MR. MIEDEL:  Your Honor, I'm going to at least right

19     now, it looks like I'm going to be on trial that week of

20     June 6--

21          THE COURT:  January 6?

22          MR. MIEDEL:  Sorry, January 6.  I think Ms. Choi is

23     also going to be on trial in January.  We were looking for a

24     possible sentencing date at the end of January, beginning of

25     February.

J9NQtyuP

1          THE COURT:  Ms. Ng, what do we have?

2          MS. CHOI:  Your Honor, if we could do mid February,

3     that would be the government's preference in light of its trial

4     schedule.

5          THE COURT:  Does the defense have any objection to mid

6     February?

7          MR. MIEDEL:  No.

8          DEPUTY CLERK:  Thursday, February 13, 2020 at 2:30.

9          MR. MIEDEL:  That's fine, thank you.

10          MS. CHOI:  That works for the government, your Honor.

11          THE COURT:  All right.  So sentencing is set for

12     February 13, 2020 at 2:30 in the afternoon.

13          Counsel, please be certain to get any objections or

14     other comments back promptly to probation once the draft report

15     is discussed and make your sentencing submissions in accordance

16     with my sentencing submission procedures which are posted on

17     the court website.

18          Ms. Choi, will you get the government's factual

19     summary to probation in the next two weeks?

20          MS. CHOI:  Yes, your Honor.

21          THE COURT:  Thank you.  And Mr. Miedel, if you have

22     not heard about the scheduling of an interview in the next two

23     weeks, would you please reach out promptly to make sure that

24     that happens promptly?

25          MR. MIEDEL:  Yes, I will.

J9NQtyuP

1              THE COURT:  Thank you.

2              Mr. Tyurin, the probation department will be preparing

3     a presentence report to assist me in sentencing you.  You will

4     be interviewed by the probation office.  It is important that

5     the information that you give to the probation officer be

6     truthful and accurate.  The report is important in my decision

7     as to what your sentence will be.  You and your attorney will

8     have the right and will have an opportunity to examine the

9     report, to challenge or comment on it, and to speak on your

10    behalf before sentencing.  Failing to be truthful with the

11    probation office and the Court may have an adverse effect on

12    your sentence and may subject you to prosecution.  Do you

13    understand that?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Thank you.

16             Counsel, is there anything else we should take up

17    together this afternoon?

18             MS. CHOI:  Not from the government, your Honor.  Thank

19    you.

20             MR. MIEDEL:  No, your Honor.  Thank you.

21             THE COURT:  Thank you.  We are adjourned.  Keep well

22    everyone.

23             (Adjourned)

24

25