UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

UNITED STATES OF AMERICA,

        Plaintiff,

    -v-                                      No.  15-CR-00333-LTS-4

ANDREI TYURIN,

        Defendant.

---------------------------------------------------------x

<u>ORDER</u>

        Defendant Andrei Tyurin moves <u>pro se</u> for a reduction of his sentence pursuant to section 3582(c)(1)(A) of title 18 of the U.S. Code.  The Court has carefully reviewed the parties' submissions (docket entry nos. 328 ("Def. Mot."), 330 ("Govt Opp."), and 336 ("Def. Reply"))[1] and, for the reasons that follow, Defendant's motion is denied.

I.        BACKGROUND

        On September 23, 2019, Mr. Tyurin pleaded guilty to Counts One (conspiracy to commit computer hacking), Two (wire fraud), Eight (Unlawful Internet Gambling Act conspiracy), and Nine (conspiracy to commit wire and bank fraud for unlawful payment processing) of a superseding indictment in the above-captioned case; and to Counts One (wire fraud conspiracy) and Five (computer fraud and identity fraud conspiracy) of an indictment brought in the Northern District of Georgia.  (Docket entry no. 109 ("Plea Tr.") at 51-52.)  As the Court explained at length when weighing the factors embodied in section 3553(a) of title 18 of

---

[1]    For materials docketed on ECF, pincites refer to ECF-paginated page numbers.

the U.S. Code at Mr. Tyurin's sentencing, the defendant's crimes—which involved hacking extensive amounts of customer data from major U.S. companies in aid of other criminal schemes, including securities and bank fraud—were extremely serious.  (Docket entry no. 174 ("Sentc. Tr.") at 32-33, 35.)  On January 7, 2021, the Court sentenced Mr. Tyurin principally to a below-guidelines term of imprisonment of 144 months, with no term of supervision to follow.  (Docket entry no. 184 ("Amended Judgment").)  The Court also recommended to the Bureau of Prisons that Mr. Tyurin be credited with the time—approximately nine months—that he spent in pre-extradition custody in the Republic of Georgia, where he was arrested in late 2017 in connection with the hacking and wire fraud scheme.  (Id.)  Mr. Tyurin's projected release date is March 3, 2028.  See Find an Inmate, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited June 18, 2026) (inmate number 86107-054).

This is Mr. Tyurin's second motion for compassionate release.  On November 6, 2023, with the assistance of counsel, Mr. Tyurin filed his first motion for compassionate release, which asked the Court to amend his sentence and impose a brief term of supervised release, which would in turn potentially entitle the Bureau of Prisons to apply credits toward Mr. Tyurin's early release for participating in programming pursuant to the First Step Act.  (Docket entry no. 238.)  The Court denied Mr. Tyurin's first motion on June 27, 2024.  (Docket entry no. 299, also available at United States v. Tyurin, No. 15-CR-333-LTS, 2024 WL 3226521, at *3 (S.D.N.Y. June 27, 2024).)

## II.    DISCUSSION

A district court may reduce a defendant's term of imprisonment under section 3582(c)(1)(A) of title 18 of the U.S. Code when: "(1) a defendant has exhausted all administrative remedies with the BOP, (2) 'extraordinary and compelling reasons warrant such a

reduction,' (3) the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission,' and (4) the reduction is supported by the factors set forth in 18 USC § 3553(a), to the extent they apply." United States v. Stillwell, No. 13-CR-00521-RA, 2026 WL 276018, at *2 (S.D.N.Y. Feb. 3, 2026) (quoting 18 U.S.C. § 3582(c)(1)(A)).  The defendant carries the burden of proving that he is entitled to a sentence reduction.  United States v. Gogel, No. 13-CR-00521-LTS-4, 2026 WL 864222, at *1 (S.D.N.Y. Mar. 30, 2026).[2]

Here, it is uncontested that Mr. Tyurin satisfied the administrative exhaustion requirement by submitting a request for a sentence reduction to the Warden of his facility, which the Warden denied on December 17, 2025.  (Def. Mot. at 2; Govt. Opp. at 5 n.3.)  Thus, the Court turns to whether Mr. Tyurin has met his dual burdens of identifying extraordinary and compelling reasons for a sentence reduction and demonstrating that the 18 U.S.C. section 3553(a) factors support a reduction in his sentence.  For the reasons explained below, Mr. Tyurin's motion is denied because he has not established extraordinary and compelling reasons, and the Court need not consider the 18 U.S.C. section 3553(a) factors.

A.    Extraordinary and Compelling Reasons

Mr. Tyurin must demonstrate that extraordinary and compelling reasons support a reduction in his sentence.  When assessing this factor, district courts may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them." United States v. Fernandez, 104 F.4th 420 (2d Cir. 2024) (quoting United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020)), aff'd, 146 S. Ct. 1292 (2026).  "The only statutory limit" on this

---

[2]    Because Mr. Tyurin is proceeding pro se, the Court reviews his submissions with "'special solicitude' and will construe them 'liberally' and interpret them 'to raise the strongest arguments that they suggest.'"  Stillwell, 2026 WL 276018, at *3 (quoting Bloodywone v. Bellnier, 778 F. App'x 52, 53 (2d Cir. 2019) (summary order)).

discretion is that "'[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'"  Brooker, 976 F.3d at 237-38 (quoting 28 U.S.C. § 994(t)).  Section 1B1.13(b) of the Sentencing Guidelines identifies several circumstances that could, alone or in combination, amount to "extraordinary and compelling reasons" that warrant a reduction.  These circumstances include the defendant's age, medical circumstances, family circumstances, and status as a victim of abuse.  U.S.S.G. § 1B1.13(b)(1)-(4).  Section 1B1.13(b)(5) of the Sentencing Guidelines also contains a catch-all provision that encourages courts to consider "any other circumstance or combination of circumstances . . . similar in gravity" to those the policy statement expressly enumerated.  U.S.S.G. § 1B1.13(b)(5).

Mr. Tyurin advances three different arguments—under sections 1B1.13(b)(5), 1B1.13(c), and 1B1.13(e) of the Sentencing Guidelines.[3]  The Court addresses each in turn but finds none of them persuasive.

> i.    Section 1B1.13(b)(5)

First, Mr. Tyurin contends that he falls within the scope of section 1B1.13(b)(5) because he suffered a serious shoulder injury when his former cellmate attacked him by pushing

---

[3]    Mr. Tyurin correctly acknowledges that he was not a "victim of abuse" within the meaning of Guidelines section 1B1.13(b)(4) because his abuse did not occur at the hands of a correctional officer or any individual who had custody or control over him and because his abuse was not established by a judicial or administrative proceeding.  (Def. Mot. at 7-8); see U.S.S.G. § 1B1.13(b)(4)(B) (requiring that the abuse be "committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant" and that the abuse be "established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger").

Mr. Tyurin also contends that the Court may consider his rehabilitation under Guidelines section 1B1.13(d), (Def. Mot. at 11-15), but "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement," (U.S.S.G. § 1B1.13(d) (quoting 28 U.S.C. § 994(t))).

him and causing him to fall and hit his shoulder on a toilet.  (Def. Mot. at 3-8.)  Mr. Tyurin avers that his shoulder injury was painful and went untreated for more than two years until he recently underwent shoulder surgery.[4]  (Id. at 3-5.)  Mr. Tyurin also contends that he was a low-security prisoner and that the Bureau of Prison's failure to transfer him to a low-security facility led to his attack and injuries, especially given that Mr. Tyurin's attacker (his former cellmate) was a medium-security inmate.[5]  (Id. at 5-6.)

Section 1B1.13(b)(5) of the Sentencing Guidelines is a catch-all provision that encourages courts to consider "any other circumstance or combination of circumstances . . . similar in gravity" to those the policy statement expressly enumerated. U.S.S.G. § 1B1.13(b)(5).  .  Mr. Tyurin argues that his circumstances are "similar in gravity" to those described in section 1B1.13(b)(4).  In support of this contention, Mr. Tyurin cites several cases in which courts found section 1B1.13(b)(5) satisfied on the basis of severe medical circumstances.  (Def. Reply at 3-5 (citing United States v. Cheng, No. 21-CR-00261-RA, 2025 WL 573767, at *3 (S.D.N.Y. Feb. 21, 2025); United States v. Griffin, No. 22-CR-00408-EK, 2024 WL 2891686, at *2 (E.D.N.Y. June 10, 2024); United States v. Welch, No. 09-CR-60212, 2020 WL 4333667 (S.D. Fla. May 21, 2020); United States v. Crowe, No. 11-CR-20481, 2020 WL 6544514 (E.D. Mich. Nov. 6, 2020)).)  None of these cases, however, are analogous because each involved a combination of severe medical circumstances and other extenuating circumstances that were much more immediate and compelling than Mr. Tyurin's.  Cheng, 2025

---

[4]    It is unclear when Mr. Tyurin was attacked, but he first sought medical treatment for his shoulder in March 2024.  (Def. Mot. at 25-27.)

[5]    On August 15, 2022, Mr. Tyurin moved for a transfer to a lower-security facility. (Docket entry no. 231.)  On August 22, 2022, the Court denied Mr. Tyurin's motion, explaining that it had no authority to review the Bureau of Prison's designations, but nonetheless recommended to the Bureau of Prisons that Mr. Tyurin be redesignated to a lower-security facility.  (Docket entry no. 232.)

WL 573767, at *3 (A "stabbing [by another inmate] left [defendant] with wounds to his head and back and serious facial lacerations that required him to be treated in a hospital"; defendant was "placed in solitary confinement for the next five months out of concerns for his safety," causing psychological damage; and harsh pandemic conditions found, in combination, to constitute extraordinary and compelling circumstances.); Griffin, 2024 WL 2891686, at *2-3 (Despite reporting safety concerns to a correctional officer, the defendant was beat by three other inmates, which "left [defendant] with a fracture of the right orbital bone . . . as well as a laceration to his right eye and swelling and bruising of the eye and face." Furthermore, following the attack, the "facility[] fail[ed] to provide follow-up care according to [defendant's] prescribed treatment plan." Court found need for follow up care a pressing concern that, in combination with death in family, an extraordinary and compelling circumstance warranting two-week sentence reduction.); Welch, 2020 WL 4333667, at *2-3 (Finding, in May 2020, that the "existence of the COVID-19 virus in the facility where Defendant is incarcerated, in combination with two medical conditions from which Defendant suffers [asthma and Type-2 diabetes], makes him particularly vulnerable to dire consequences if he contracts the virus"; defendant was unable to take his prescribed medication for diabetes; defendant "was recognized for an act of heroism which prevented serious injury to a prison employee"; and defendant "was personally responsible" for a successful pro se cert petition to the U.S. Supreme Court that resulted in a favorable decision making another Supreme Court decision "retroactive for the benefit of probably thousands of defendants who were subjected to illegal sentences."); Crowe, 2020 WL 6544514, at *3-4 (Granting six-month sentence reduction in November 2020 based on findings that Defendant suffered from "latent tuberculosis," and the risk that he would develop full tuberculosis was "further exacerbated by the current confirmed cases of COVID-19 at USP Terre

Haute and the fact that his commissary job requires him to interact with more people than most inmates.").

Compared to the medical conditions presented in the cited cases, Mr. Tyurin's condition is much less severe, and he has been receiving appropriate medical treatment while in custody.  Mr. Tyurin's medical records establish that he did not seek medical treatment until months after being allegedly attacked and suffering the shoulder injury.  A March 28, 2024 medical report states that "[Mr. Tyurin] reports to medical for right shoulder pain after being pushed and falling multiple months ago.  Incident was never reported to medical." (Def. Mot. at 26.)  That same medical report states that Mr. Tyurin's shoulder was generally pain-free and that he "really only ha[d] problems sleeping." (Id.)  Similarly, an x-ray report dated April 10, 2024 states that Mr. Tyurin had "[n]o fracture or joint malalignment." (Id. at 28-31.)  On October 17, 2024, several months after Mr. Tyurin's alleged attack, an MRI showed that he had a labral tear. (Id. at 45.)  Even then, Mr. Tyurin decided to undergo physical therapy instead of surgery. (Id.) Nearly a year later, in September 2025, Mr. Tyurin had shoulder surgery.  (Govt Opp., Ex. A at 29-34.[6])  Since then, as Mr. Tyurin's medical records show, he has been receiving appropriate follow-up treatment, including physical therapy, and he has been improving. (Id. at 2-28.) Under these circumstances, Mr. Tyurin has not established that his situation presents extraordinary and compelling circumstances.  See United States v. Connerton, No. 17-CR-00047-SRU, 2022 WL 3284392, at *3 (D. Conn. Aug. 11, 2022) (denying compassionate release because "the medical records establish both that [defendant's] injuries are being monitored, and the BOP is equipped to provide [defendant] with the medical surgery that he requires").

---

[6]    Exhibit A to the Government's Opposition (docket entry no. 330) was filed under seal in its entirety because it contains sensitive medical information.

Mr. Tyurin's attempts to blame the Bureau of Prisons for his injuries also fall flat. He has not proffered any evidence that he reported his former cellmate for safety concerns, cf. Griffin, 2024 WL 2891686, at *3 (finding section 1B1.13(b)(5) satisfied where defendant was attacked despite reporting safety concerns to a correctional officer), and mere placement in an unpreferred facility does not amount to extraordinary and compelling circumstances, see, e.g., United States v. Hardin, No. 12-CR-00080-MAC, 2025 WL 2306848, at *7 (E.D. Tex. Aug. 11, 2025) (finding section 1B1.13(b)(4) not satisfied where female defendant was forced to cohabitate with biologically male inmates who identified as female); United States v. Shelton, No. 14-CR-00016-RSB, 2026 WL 196477, at *6 (W.D. Va. Jan. 26, 2026) (same).

      ii.      Sections 1B1.13(c) and 1B1.13(e)

Mr. Tyurin next argues that, in evaluating his motion, the Court should consider the First Step Act of 2018 (the "FSA") and the accrual of Federal Time Credits. As the Court has previously explained, Mr. Tyurin is not statutorily eligible under the First Step Act because he is the "subject of a final order of removal under any provision of the immigration laws." Tyurin, 2024 WL 3226521, at *2 (quoting 18 U.S.C. § 3632(d)(4)(E)). Despite this, Mr. Tyurin now argues that the First Step Act's Federal Time Credits should apply as "changes in law circumstances [sic]" under Guidelines sections 1B1.13(c) and 1B1.13(e). (Def. Mot. at 9.) Contrary to Mr. Tyurin's arguments, however, neither Guidelines provision applies.

Guidelines section 1B1.13(c), which covers "changes in law," does not apply because the FSA was not a change in law—the FSA was enacted in 2018, long before Mr. Tyurin's sentencing in 2021. U.S.S.G. § 1B1.13(c).

Guidelines section 1B1.13(e) simply "clarifies that any circumstances establishing extraordinary and compelling reasons warranting a reduction need not have been 'unforeseen at

the time of sentencing.'" United States v. Donato, No. 03-CR-00929-NGG, 2024 WL 665939, at *4 (E.D.N.Y. Feb. 16, 2024) (quoting U.S.S.G. § 1B1.13(e)). Mr. Tyurin contends that the provision applies because the parties did not "'anticipate' at sentencing . . . [that] the provisions and benefits that the FSA contained which could have afforded Mr. Tyurin a shortening of his term of incarceration for his participation in EBRRP/PAs [Evidence-based Recidivism Reduction Programs and Productive Activities]." (Def. Mot. at 9-10.) Under 1B1.13(e), whether or not the application of the FSA to Mr. Tyurin was foreseeable at the time of sentencing is of no matter. The fact of the matter is that Mr. Tyurin was never statutorily eligible for the FSA. As this Court has already found, "Mr. Tyurin's circumstances are those that Congress intended—indeed, the FSA's ineligibility criteria apply to all incarcerated persons in his position—and thus are not 'extraordinary and compelling.'" Tyurin, 2024 WL 3226521, at *3; see, e.g., United States v. Herrera, No. 21-CR-750-LJL, 2023 WL 3862695, at *3 (S.D.N.Y. June 7, 2023) (observing that the defendant's "circumstance reflects the ordinary functioning of congressional policy").

III.    CONCLUSION

For the forgoing reasons, Mr. Tyurin's motion is denied because he has failed to establish extraordinary and compelling circumstances warranting compassionate release. This resolves docket entry no. 328.


        SO ORDERED.

Dated: New York, New York
        June 22, 2026


                                            /s/ Laura Taylor Swain
                                            LAURA TAYLOR SWAIN
                                            United States District Judge